IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2020 DEC 11 A 10:48

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Michael Shane Durham
Reg No. 36419-001

v.

Roger Warren, Kevin Calhoun, Barry Briggs, Denise Rogers, Richard Dunbar and Alan Cohen, individually and in their offical capacity;

**2:20-cv-01015-WHA-KFP**

Action Under Bivens v. Six Unknown Named Agents Alleging Discriminatory Practices and Due Process Violations

Now comes Plaintiff Michael Shane Durham (hereinafter "Durham", Plaintiff" and/or "Petitioner") pro se and in accordance with the Federal Rules of Civil Procedure brings the following Action under Bivens v. Six Unknown Named Agents Alleging Discriminatory Practices and Due Process Violations ("Action" or "Complaint") against the herein named Defendants. Durham requests that this pro se filing be construed liberally in accordance with Boxer v. Harris, 437 F.3d 1107, 1110 (11th Cir 2006). In support hereof, Durham states as follows:

I. PARTIES

Plaintiff, Michael S. Durham, is a 41-year old inmate in the custody and control of the Federal Bureau of

Prisons ("BOP"). Durham is housed at the Federal Prison Camp, Maxwell Air Force Base, Montgomery, Alabama. ("Maxwell"). Durham was sentenced in 2019 to a term of incarceration of 57 months in violation of 21 USC §846, 841 (A)(1) conspiring to possess and distribute Methamphetamine. Durham reported to Maxwell January 21, 2020. This is Durham's first prison bid.

Defendant Roger Warren (hereinafter "Warren") is a full-time employee of the BOP. He is a counselor for the Montgomery Housing Unit. Warren is responsible for the upkeep and general maintenance of one half of the Montgomery Housing Unit. He is also the inmates' primary contact for filing administrative remedies - those inmates who live on one (of two) side of the Montgomery Unit.

Defendant Kevin Calhoun (hereinafter "Calhoun") is a full-time employee of the BOP. He is a case manager for the same half of the Montgomery Housing Unit for which Warren is a counselor. Calhoun is responsible for managing the inmate population, specifically paperwork, and communications to and from others within and outside the BOP, relating to inmates' re-entry to society. Calhoun's office is adjacent to Warren's. Calhoun is Durham's Case Manager.

Defendant Barry Briggs (hereinafter "Briggs") is a full-time employee of the BOP. He is the Unit Manager for the Montgomery Unit. Briggs is responsible for all aspects of the day-to-day operations of the Montgomery Unit including but not limited to living conditions, general conditions and security. Briggs is Calhouns' immediate supervisor. Briggs is Plaintiff's Unit Manager.

Defendant Denise Rogers (hereinafter "Rogers") is a full-time employee of the BOP.. She is the Case Manager Coordinator ("CMC"). Rogers is responsible for overseeing and managing Maxwell's case managers (including Calhoun) with respect to their compliance with BOP policy and procedures as they relate to inmates' re-entry into society.

Defendant Richard Dunbar (hereinafter "Dunbar") is a full-time employee of the BOP. He is the Associate Warden for Maxwell. Dunbar is responsible for operational management of the Maxwell Camp, including management for the housing units. Dunbar is responsible for the correctional staff and the administrative staff including Rogers, Briggs and Calhoun. Dunbar is responsible for resolving complaints, and other issues, between the inmate population and staff, and for communicating BOP policies to inmates and staff.

Defendant Alan Cohen (hereinafter "Cohen") is a full-time employee of the BOP. Cohen is the Warden at Maxwell, appointed to that position on or about June 1, 2020. Cohen is the Chief Executive officer of the facility. He is ultimately responsible for the operations, management and security of the facility, the conduct of the correctional and administrative staff, and the safety and well-being of the inmates.. All employees, including Warren, Calhoun, Briggs, Rogers and Dunbar report to Cohen.

JURISDICTION AND VENUE

The United States District Court ("U.S District Court") has jurisdiction because Petitioner seeks relief in violation of the Due Process Clause of the Fifth and Fourteenth Amendments, the Fourteenth Amendment's Equal Protection Clause, and pursuant to 28 U.S.C § 1331, Petitioner seeks relief from his cruel and unusual conditions of confinement in violation of the Eighth Amendment.

The Federal Prison Camp, Maxwell, is located within the Middle District of Alabama. Durham is housed at Maxwell. Defendants Warren, Calhoun, Briggs, Rogers, Dunbar and Cohen are presently employed at Maxwell. All of the actions by Defendants against the Plaintiff took place at Maxwell. Venue is proper in the Middle District of Alabama.

This unconstitutional discriminaton has manifest in the number and percentage of African American inmates (versus Caucasians and Hispanics) being released to home confinement in Durham's Montgomery Housing Unit from April through October 2020. Durham estimates (and several similarly situated Plaintiffs including Michael Rand, Jason Votrobek and Bradford Daley along with Affiants in those actions and this action) that the percentage of African American inmates, excluding transfers from other housing units, has dropped from approximately ≈ 60% to approximately 30% during the April–October 2020 time frame. Since race was not a criteria in Barr's directive, on a macro level it certainly appears that the release-application process was anything but void of systemic racism.

On a micro level, Durham has identified several African American inmates who have been released with (a) fewer medical conditions; (b) lengthier prior criminal histories; (c) comparable percentage of sentence-time served and (d) lower BMI scores without any other vulnerable conditions

# SUMMARY

I have read each of the three Bivens actions filed by current and former inmates Nekvasil, Rand and Votrobek currently before the District Court.[FN 1] My experiences have echoed each of theirs (along with Affiants' similar experiences provided in Rand's complaint) In fact, I provided an affidavit to this court on behalf of inmate Rand in his early October 2020 filing. The common threads of each of these complaints was Maxwell's violation of inmates' Due Process Rights and Right to Avoid Cruel and Unusual Punishment. In addition Plaintiffs Rand and Votrobek cited discriminatory practices of Maxwell personnel in violation of our Constitution's Equal Protection Clause.

My chronology and experiences are shorter yet are strikingly more emphatic of the constitutional violations than expressed by Nekvasil, Rand and Votrobek - yet ultimately concern the same behavior.

Regarding my Due Process Claim, (1) Defendant Warren has simply refused to provide me necessary paperwork to pursue my administrative remedies; and (2) Defendants Calhoun, Briggs, Rogers, Dunbar and Cohen have ignored Maxwell's resident physician Dr. Rodriguez's recommendation that I be placed on home confinement due to my

FN-1 Three additional actions by Bradford Daley, David Lonich and James Edgerson were filed subsequent to my action being drafted.

highly vulnerable medical conditions which include:

(a) A Protein S deficiency causing dangerously low hemoglobin.

(b) Immune compromised systems due to factors in (a)

(c) Permanent damage to both lungs caused by Bibasilar Airspace Disease resulting from a Previous pulmonary embolism

(d) Immunoglobulin Associated Vasculitis which causes leg ulcers

(e) Blood clots; and

(F) Obesity - my BMI is currently 49. I would need to lose roughly 120 lbs. on my five foot six inch frame to achieve a 30 BMI score, the minimum on the CDC-listed medical condition scale for obesity.

(g) Diabetes

Regarding my Equal Protection Clause Claim, I provide herein actions taken and statements made by defendants raising absolutely no question as to whether I have been invidiously discriminated against in my pursuit of home confinement under The CARES Act

Not to be overly repetitive, but I remind the Court I am not alone in my claims against Defendants - This Court is currently handling three similar matters, and barring unforeseen changes in

circumstances, two additional inmates are ready to file similar actions and/or may have already filed before this Action reaches the Court.

## PRELIMINARY STATEMENT

"Due Process is the touchstone of the American jurisprudence system".

The Constitution confers upon the Court a duty to assume responsibility for inmates' safety and general well-being. Helling v. McKinney, 509 U.S. 25, 32 (1993). The threat of exposure to a deadly infectious disease like COVID-19 and subsequent mistreatment due to a lack of medical resources constitutes a serious risk to health, particularly for the Petitioner with vulnerability.

Plaintiff is five feet six inches tall and presently weighs approximately 305 lbs. My BMI score is 49. The obese category starts at 30. One is considered to suffer from "severe obesity at 40". I'm not merely husky. suffice it to state.

COVID-19 poses immeasurable risks to those confined in prison. It is well documented and has been expressed to this Court in Nekvasil, Rand and Votrobek matters v. The Named Defendants.

Limited testing has taken place at the Maxwell Camp. While no one reportedly has tested positive, given the lack of testing and the large number of asymptomatic cases, occuring across the country at all age brackets, Maxwell prison management can hardly be confident the virus hasn't breached the prison's fences and walls.

A recent study by NYU Scientist Tiernan Ray found obesity the single biggest "chronic factor" in New York City's COVID-19 hospitalizations. According to one study by the Center of Disease Control and Prevention ("CDC"), the mortality rate for one who is infected with COVID-19 and suffers from chronic respiratory issues is 8.0% versus less than 3% for the general population.

In a March 26th, 2020 memo, Attorney General William Barr issued a directive addressed to the Director of the BOP. The Stated purpose of the memorandum, still deemed the foundational Policy according to prison personnel, was to "ensure that we utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody". The

BOP was directed to consider "the totality of the circumstances" of each inmate's situation while considering the following non-exhaustive list of discretionary factors:

- the age and vulnerability of the inmate for COVID-19 in accordance with CDC guidelines
- the security level of the facility currently holding the inmate
- the inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison, or who have incurred a BOP violation within the last year not receiving priority treatment
- the inmate's PATTERN score
- whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety
- the inmate's crime of conviction and assessment of the danger posed by the inmate to the community.

The Barr directive also mandated the BOP to make an assessment of an inmate's risk.

factors for severe COVID-19 illness based on CDC guidelines as well as an evaluation of the risk at the location in which the inmate seeks home confinement.

An April 16, 2020 memo authored by David Brewer, Acting Senior Deputy Assistant Director, communicated two new disqualifying eligibility criteria - (1) excluding inmates with incident reports within the last twelve months from eligibility, not merely from prioritization consideration (as per Barr's March 26 memo); and (2) requiring minimum PATTERN scores. Previously, the only disqualifying criteria to Camp inmates were pending charges and detainers. Durham had no pending charges and detainers (and still does not as of the date of this filing). Further, Durham has not been the recipient of any incident reports since his January 2020 self-report date.

Within the following week, the Montgomery Unit team office displayed a list of eight required criteria for home confinement eligibility. This list added, oddly in a different font, "Inmate must have served at least 50% of their sentence.

No formal or informal communications to inmates regarding criteria changes have been made other than statements made in May for the Associate Warden (Dunbar) that (1) all inmates 65 and older should be released to home confinement; (2) time served should be adjusted for Good Conduct Time (accrued at 15% of time served); and (3) less severe incident reports were removed from the disqualification list.

From April through May and into June, Maxwell worked its way through the prioritized list of which Dunham acquiesces he did not qualify due to his lack of time served. Beginning in late June or thereabouts, Maxwell began releasing inmates who didn't meet all of the initial prioritized criteria. For example, inmates without minimum pattern scores, inmates with histories of violence and inmates with recent incident reports of moderate severity. Relevant to Durham's situation, inmates have been released who have not served more than 25% of their sentences.

Each of the above paragraph statements were made based on Plaintiff's Knowledge and belief.

When inquired by other inmates, Dunbar, Calhoun and Rogers have refused to provide an updated formal official list of the eligibility criteria. Rand's request for administrative remedy (BP-9) was denied by Cohen on this topic "FPC Management cannot give you full disclosure of the requested documentation, however your family can go to the BOP website and retrieve information on home confinement or they can request this documentation through FOIA".

CHRONOLOGY OF PETITIONER'S RELIEF EFFORTS (UNDER THE CARES ACT) AND DEFENDANTS' REPREHENSIBLE ACTIONS AND BEHAVIOR

Plaintiff was greeted by Defendant Counselor Warren on his first day at Maxwell. Warren asked Durham where he was from and Petitioner politely, as always, responded Cullman, Alabama. Warren then asked Durham if he smoked or dipped and Durham politely responded "No". Durham vividly recalls Warren's reaction to his negative response "Well, you are lying to me already. If you are a White man from the South, then you're nothing but a piece of shit". This deplorable introduction was anything but invited. See Affiant Statement in Exhibit 1 confirming this took place.

During the next two weeks, prior to being assigned a job, Warren directed Plaintiff to perform miscellaneous maintenance tasks for the benefit of the housing unit - and Petitioner took no exception to these requests. However, during orderly meetings every morning with several inmates (and at times, correctional officers) participating, Warren on multiple occasions told Plaintiff he was going to "Strap his fat ass behind a truck so he would lose weight". Numerous times, he referred to Plaintiff in front of others as a "fat slob". Warren has moved Durham seven times during his approximate nine months in the Montgomery Housing Unit, an unconscionable and excessive frequency, especially when considering Durham's lack of incident reports. See Affidavit of Inmate in Exhibit I. He was assigned a top bunk by Warren, initially, despite being told he was on blood thinners and could possibly bleed to death.

Before addressing Plaintiff's medical history and experiences with prison medical staff, Plaintiff will describe his experience in applying for COVID-19 home confinement under The CARES Act.

In early April, Durham provided the requisite paperwork to Calhoun and Warren to commence the home confinement application process. Durham was called to Calhoun's office on May 26, 2020 to be told his application was denied with no reason given. Durham began his administrative process immediately and

mailed the Regional Administrative Remedy Appeal ("BP-10") on June 30, 2020. The Regional Office responded with a November 5, 2020 Rejection Notice Remarking "This is a Duplicate Remedy Matter and has Already Been Assigned at Regional Level". Durham feels a compelling need to address this remark herein - this BP-10 requested COVID-19 Home Confinement pursuant to Barr's Directives. His other BP-10, which has to this date not been responded to despite aged over 90 days, sought §3582 compassionate release. It is Petitioner's understanding based on the representations of Defendants named herein that both remedy appeals were available and required to be submitted separately. Since Durham's second BP-10 (at a minimum) has not been addressed and is past its deadline, Durham's administrative remedies are deemed exhausted. (See Exhibit 6). Moreover, as addressed in Plaintiff's Due Process argument to follow, Counselor Warren has refused to provide Durham a BP-11 to file with the National BOP office and has told Durham he has had to wait for an answer on his BP-10 first, regardless of how long the Southeast Region took to respond (this of course Durham has learned is steadfastly untrue).

After several weeks of medical issues, diagnosis and medical procedures, Petitioner approached Calhoun and requested to be resubmitted to home confinement. During this time, although no formal (or informal) communication was issued requiring a CDC listed medical condition, word spread in Durham's facility that one's medical records needed

to reflect a condition to be considered by the BOP to be placed in home confinement (unless an inmate was 65 or older). Acknowledging Petitioner's change in circumstances as documented in his medical records (see conditions listed on P. 7 of this Action), Calhoun informed Petitioner he would be and was re-submitted for home confinement consideration. On August 19, 2020, Calhoun informed Petitioner he was denied this second time due to (a) a 20-year old probation violation (for leaving his confined area while on probation for bouncing/issuing a bad check), which was subsequently dismissed; and (b) three prior drug arrests which were also all subsequently dismissed. Meanwhile, as discussed later herein, Calhoun has released several, mostly if not all, African American inmates to home confinement with a much longer criminal history, some having served multiple prison sentences in federal prison. Rather than list all the examples Petitioner is aware of (and there are several) in which other inmates similarly situated have received preferential treatment, Petitioner

will limit his list herein to Inmate A, an African American with a long criminal history (with violence) who was released despite many fewer medical conditions and despite a much lower BMI than Petitioner. Other Plaintiffs - Nekvasil, Rand, Votrobek, Daley, Lonich and Edgerson have all cited similarly situated African American inmates who were afforded disparate treatment and were released to home confinement. Durham will seek discovery from Defendants to provide the Court ample evidence of the discriminatory practices alleged herein.

To be clear, Plaintiff has sought and filed administrative appeals and remedies on his second denial (with his medical conditions well documented) and the Southeast Region has not responded. Warren has likewise refused to provide Petitioner a BP-11 Regional Administrative Appeal on his second denial.

Plaintiff, unlike Plaintiffs Rand, Votrobek and Daley has not filed a Freedom of Information Act request on the demographic data which would support his claim.. Plaintiff, however will seek discovery of such information at the proper juncture of this proceeding.

MAXWELL PRISON INMATES HAVE URGENT NEEDS THAT REMAIN UNMET.

Michael Rand laid out on pp. 42-45 of his Complaint against Sanders, Briggs and other Maxwell and BOP defendants how the facility's layout and policies, procedures and protocols present intensified risks to both inmates and Maxwell Prison Camp employees.. See Michael T. Rand v. Demetrius Sanders et al, case No 2:20 CV 00783-MHT-JA.

Every American, however, by now recognizes the ominous situation facing inmates in prisons and detention centers across the U.S. The lack of social distancing and unsanitary conditions presents real dangers which can be easily mitigated by releasing extra vulnerable inmates such as Durham to home confinement or acceptably, house arrest. Unlike many inmates who have been released under The CARES Act, Durham life is at risk.

# DEFENDANTS DENIED PLAINTIFF HIS DUE PROCESS RIGHTS

Our jurisprudence system allows for two types of Due process Clause violations - procedural and substantive. Procedural due process is a guarantee of fair procedure. Although due process requirements vary by context and involve a balancing of interests, the essential requirements are notice and an opportunity to respond. In other words, the opportunity to present reasons as to why a proposed action should not be taken is a fundamental due process requirement.

Plaintiff's procedural due process rights were violated as follows:

(1) Counselor Warren's refusal to provide Plaintiff a BP-11, Administrative Remedy, Appeal to the National BOP office, an unequivocal and capricious due process violation;

(2) Case Manager Calhoun's not providing Petitioner the identity of the party or parties making the denial decision, this refusal deprived Durham of his right and ability to challenge the BOP's denial;

(3) Case Manager Calhoun's refusal, with respect to Petitioner's first submission, to provide Petitioner the reasons for his denial - which under facts and circumstances, appear to have been made by

Calhoun and Briggs

(4) Most importantly, the denial(s) themselves. Based on the totality of the circumstances, Petitioner suffering from a number of CDC listed medical conditions, is extremely vulnerable to destructive damage should he contract COVID-19. His Minimum PATTERN score indicates low recidivism risk, he has no history of violence or sex crimes, he has a stable safe re-entry plan - and is presently in a minimum custody facility. The reasons provided Petitioner by Calhoun - that Durham's Pre-Sentence Report referred to a probation violation from 20 years ago and three prior drug arrests, all of which were dismissed, are disingenuous and fallacious. Attorney General Barr's directives to act with haste to protect vulnerable inmates was targeted to inmates such as Durham. - a severely immune-compromised, obese diabetic with Immunoglobin Associated "A" Vasculitis.

Procedural due process also encompasses the BOP's and Maxwell's obligation to follow their own policy as ruled in the 1954 Supreme Court Case, Accardi v Shaughnessy - even where Government officers have broad discretion.

Durham also claims herein substantive due process violations - state conduct violations that are "arbitrary, egregious and conscience shocking." Overt displays of bigotry - saying to Plaintiff "If you're a white

man from the South, then you're nothing but a piece of shit" can hardly be deemed acceptable banter by a state official. Such intentional discrimination claims resulting in Durham's detention in a facility which presents extreme dangers should the virus breech its walls, falls into the substantive due process violation category - that is behavior that is "unjustifiable by any governmental interest."

DEFENDANTS DENIED PLAINTIFF HIS EQUAL PROTECTION CLAUSE RIGHTS.

To establish a prima facie case for an Equal Protection Clause violation, a plaintiff must demonstrate that he is entitled to due process protection of an individual liberty against any arbitrary government action. A plaintiff must demonstrate that the respondent governmental actors treated similarly situated individuals in a substantially dissimilar nature. Finally, there must be "proof" of a discriminatory intent or purpose. The "proof" required may be derived from inference or course of conduct.

Plaintiff claims in this Action that Warren, Calhoun, Briggs, Rogers, Dunbar and Cohen denied Durham his Fourteenth Amendment Equal Protection

rights as a caucasian inmate - each of the Correctional officers, case managers, counselors and the Unit manager in Durham's housing unit is African American as was the Associate Warden. Durham claims he was denied equal protection by the named defendants' direct and indirect conduct as follows:

(a) Calhoun, Briggs, Rogers and Dunbar (with the acquiescence of Cohen) discriminatorily and preferentially processing and releasing similarly situated African American inmates to home confinement from April 2020 through the date of this Action. Refer to Affidavits from Bradford Daley and Michael Rand in Exhibits 2 and 3, respectively

(b) Warren, under the direct supervision of Briggs, malifecent comments to Plaintiff both in private and in public space. These claims are anything but conclusory and were observed by several inmates. See Affidavit by Ronald Roddenberry in Exhibit 1

Warren's bigotry also bore out in his actions as counselor - moving Durham's location around the unit a record seven times in nine months.

# LIST OF UNDISPUTED FACTS

This list may be supplemented once Durham's BP-8's, BP-9s are obtained.

1. Barr directed the BOP to act with haste back in March 2020 to identify at-risk non-violent low-recidivism risk inmates to release to home confinement under The CARES Act.

2. Calhoun and Briggs (with the acknowledgment and acquiescence of Rogers, Dunbar and Cohen) rejected Durham's application for home confinement despite Durham's plethora of serious medical conditions, twice. The first rejection included no reason whatsoever. The second rejection referred to a probation violations and criminal charges which were all dismissed

3. Calhoun, Briggs, Rogers and Cohen have refused to distribute the offical CARES Act home confinement policy and the effective date(s) of any changes to that policy.

4. Warren openly displayed bigotry towards Durham in his malicuous actions and words, as described herein, as confirmed

by Affiant.

5. Warren refused to provide Plaintiff a copy of a BP-11, the National BOP Administrative Appeal Form.

6. The percentage of African American inmates, excluding transfers in from other housing units, has dropped precipitously from 60% to 30% (approximate percentages for both) during the April through October 2020 time frame.

7. Similarly situated African Americans have been granted home confinement in numerous instances

~~All~~ of the Maxwell Defendant employees (and others not named herein) who are assigned to the Montgomery Housing Unit are African American

8. Durham suffers from several CDC listed medical conditions, as listed earlier herein. Dr. Rodriguez, the Facility's only onsite physician, told Durham after reading his diagnoses, in the middle of July that he was very high risk and "should have already been sent home"

# CONCLUSION AND PRAYER FOR RELIEF

Plaintiff has presented herein a solid prima facie case of Defendants' violating Durham's Equal Protection Clause, Due Process Clause and Cruel and Unusual Punishment Clause rights.

Petitioner's establishment of his Equal Protection Clause violation required him to demonstrate that (1) he is similarly situated to other persons who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, natural origin, or some other constitutionally protected bias.

Durham has shown circumstantial and direct evidence supporting his claims. Statistical inferences from facts raised point to a prima facie showing of unconstitutional bias. Words of Defendant Warren demonstrate hate and bigotry. and should not be condoned by the Court (or by Warren's supervisors at the facility).

Durham has also set forth herein a list of Due process violations - both procedural and substantive.

Plaintiff seeks a preliminary injunction placing him in home confinement with his wife of 12 years and his 12 year-old daughter. In addition, Durham seeks compensatory and punitive damages for the willful acts and statements referred to herein.

Durham is threatened by imminent injury, pain and suffering should and when the virus hit the Maxwell inmate population. It's inevitable that it will happen soon as the community in Montgomery spends more time indoors. Durham prays the Court will spare him contagion in prison, and possibly an early death at a young age.

Respectfully,

[signature]

Michael Shane Durham

Michael Durham
36419-001
Federal Prison Camp
Maxwell Air Force Base
Montgomery, AL 36112

FOREVER / USA

Montgomery AL 36
WED 09 DEC 2020 PM

CERTIFIED MAIL®

7016 1370 0002 2844 6775

FEDERAL PRISON CAMP
MAXWELL AFB, ALA.
DATE 12/9/2020

The enclosed letter was processed though special mailing procedure for forwarding to you. The letter has been neither opened nor inspected. If the writer raised a question or problem over which This facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer enclosed correspondence for forwarding to another addressee, please return the enclosed to the above address.

Office of the Cleak
United States District Court
1 Church Street Suite B-110
Montgomery, AL 36104

Legal Mail

Legal Mail